Ms. Harrington, you have reserved no time for rebuttal, so you're going all-in on your ten. All-in. Well, that's your prerogative. All right. You may proceed. Good morning, Your Honors. May it please the Court, my name is Jillian Harrington, and I was assigned by this Court to represent Defendant Appellant Charles Holley on this direct appeal. I did not represent Mr. Holley in the district court below. As Your Honors are, of course, aware, we raised three issues in Mr. Holley's appellant's brief. The first issue is whether or not the district court erred in permitting the government to introduce evidence of two items that were discovered in the car that Mr. Holley was driving. It was a baggie containing a white powdery substance and a bulletproof vest. The second issue, which is also connected to the first issue, is whether Mr. Holley was denied his constitutional right to the effective assistance of trial counsel as a result of his attorney's failure to make a timely motion or request of any kind to preclude the government from presenting any evidence regarding this white powdery substance or the bulletproof vest before it was offered into evidence by the government. And the final issue has to do with the expert witness, firearms analyst, and whether or not defense attorneys should have been permitted to cross-examine him regarding some errors that he had made. I would like to begin by drawing the Court's attention to the first issue. Now, Mr. Holley was convicted of one charge in this case, which was possession of a firearm as a felon. And that's where this case should have gone. It should have been about Mr. Holley and that firearm. However, as we mentioned, in that car was a white powdery substance and a bulletproof vest. They have nothing whatsoever to do with the firearm. Why weren't they admissible as corroboration in light of the statement that he made in which he said that he had drugs on me, I had a vest? Well, first of all, the government didn't need corroboration. They played the tape, or I guess I'm dating myself and sounding old calling it a tape, a recording of the body cam footage from the police officer. But even if they didn't need it, was it wrong to allow it in as supporting evidence? Well, it never should have gotten that far is really the argument, is that they never should have needed the corroboration because it never should have been in that part of the statement didn't need to be in front of the jury. And if the defense attorney had realized that at an earlier time, there was a pretrial suppression hearing where the defense attorney made your usual suppression arguments about custodial interrogation, the bad stop of the car or attempted stop of the car, then if the defense attorney had made the argument that it was irrelevant and or that its probative value was far outweighed by the prejudice to Mr. Hawley, then we never would have gotten to the point of corroboration because that part of the statement never would have been in front of the jury. Does that answer your honors question? Well, it's an answer. I appreciate that. Why isn't it just harmless in light of the fact that you've got an officer who sees him with the gun, you've got another officer who sees him with something that he has in his waistband and then sees him toss it and then they recover the gun from the location where it was tossed and then you have his own statement saying, yes, it's my gun. He later recants, but why isn't all that enough to say even if this wasn't, even if it wasn't necessary, even if it could have been kept out, the bulletproof vest and the drugs really was a harmless act? Because the prejudice far outweighs any probative value that it would have. Because then it takes this case to a different level. It takes this case from a charge against a man for possessing a firearm to a charge against a man for possessing drugs either as a user or as a seller. And not only possessing drugs, but it really is important to note that this white powdery substance was not tested. So we can't even say for certain as we call it drugs, we're making that assumption. He wasn't charged for the drugs. He was not charged. And the judge gave a limiting instruction, correct? The judge did not give a limiting instruction. Was a limiting instruction offered? Yes. And that's part of point two, the ineffective assistance of counsel point is that when this issue finally did arise, there was a discussion right before or as one of the government's witnesses was taking the stand. And the issue was regarding photographs and whether or not photographs of the white powdery substance and the bulletproof vest should go in. And suddenly defense counsel, I guess some kind of little light bulb went off over the defense counsel's head and said, uh-oh, we've got an issue here and this is going to hurt my client. So at that point, counsel made a relevance argument. And the district court acknowledged that this was troubling. And the district court made a comment that this was troubling. But the problem is that I kind of lost my train of thought there for a second. The problem becomes that this was too little too late. Now you've moved into your ineffective assistance. Yeah. I guess. So are you conceding then that it was not error for the district court to not give a limiting instruction when nobody asked? Yes. I did not argue that it was not, that there was not error for, that it was an error for the district court to fail to give it. It would have been nice if the judge had gone ahead and did it. And when, oh, that's where I was going with it. I apologize. When this did come up, when it was raised by defense counsel in the context of the photographs, the judge said, I find it troubling, but I'll give an instruction if you want. I'm going to let it in. And then that never happened.  But there might be good reasons why you wouldn't want an instruction. If the instruction is just going to remind the jury of something that they may have forgotten that's not going to come up in summation or not going to come up elsewhere in the charge, there might be good reasons not to sort of re-aggravate that issue by a limiting instruction. We don't have the benefit of counsel's thinking on this, right? We don't. And that's why I did mention in my brief that if Your Honors felt that this couldn't be decided in this manner, that it could be decided in or better should be decided in a 2255. But it's hard to conceive of a trial strategy by which you wouldn't want that. I understand Your Honors' concern about, you know, bringing it back up to the jury. But by not bringing it back up to the jury, now we left these jurors, we sent them into a deliberation room, not instructing them that they could not use this evidence Well, but they were instructed that they had to find that the defendant possessed the firearm, right? Yes. It was all about the firearm. I mean, is there anything to suggest that the jury thought, oh, well, we can convict even if he didn't possess the firearm because he had drugs and a bulletproof vest? I mean, that's the fear. I get it. But is there anything to think that that actually might have happened? Was there any argument in front of the jury that would urge them to consider these other things when they were deciding the one count of the indictment? No, I can't say. I can't argue that. But I can say that the government did begin its opening statement with a recitation of Mr. Hawley's statement. So they hit him right there. They doubled down on it. As soon as they came out, now, yes, he takes responsibility for possession of the firearm, which, of course, is the government's focus. And so they started out right with it. So there's no reason to think that the jury did not use that information. And, no, we're not in the minds of the jurors. But had they been given an instruction, we then could say, as this Court has held, of course, on many, many, many occasions, that jurors are presumed to follow the instruction of the courts. We cannot say that because the district court never gave that instruction. And the district court never gave that instruction because Mr. Hawley's attorney never followed up and asked him to give that instruction. If Your Honors have no additional questions, I'll rely on my brief for the rest of the  You didn't want to talk about the firearms examiner? Oh, we can talk about that. I mean, it's in your brief. I mean, no, you can have to get to it. Yeah, no, we can talk about it. You get the other two that you mentioned. No, no, I appreciate, Your Honor. This issue has to do with cross-examination. And, of course, defendants and their attorneys always have a constitutional right to address issues with the government's witnesses as well as their own. And in this instance, we have a situation where a firearms examiner admitted to the government right before trial that he made a mistake in a firearms examination in another case. I believe it was approximately five years earlier. And then the government comes in and asks the judge to preclude defense counsel from asking questions about it. But he wasn't being asked to do a similar analysis. He was not. This is just sort of an unrelated example of him making an error. Absolutely. Absolutely. It was. But the argument here, of course, is that credibility is very important when it comes to witnesses, especially expert witnesses that are presented by the government. They come in with a presumption of that kind of credibility. But the testimony was that it's a firearm and it operates, right? Yes, that it was operable. Is that a disputed fact at trial? No. So why would this matter? It's not. It's a matter of credibility and that you were keeping. But if you're not really contesting or if trial counsel and the defendant at trial were not contesting the operability of the gun, why was it necessary to impeach a witness whose only testimony is about a fact that it's really not an issue? Yeah. It may not have been. It may not have come to that, but the point at the time was that he was kept from going after the credibility of this witness, which should be a defense attorney's right to protect the rights of his client. If Your Honors have no further questions, I see my time is just about up. Thank you, Your Honors. Thank you, Ms. Harrington. We'll now hear from Mr. Eldridge. Good morning, Your Honors. May it please the Court, my name is Sean Eldridge. I'm an assistant U.S. attorney from the Western District of New York. I represent the government on this appeal, and I was one of the lawyers who tried the case before the district court. It was not an abuse of discretion for Judge Larimer to admit the photograph of the suspected drugs because it was highly relevant to corroborating Mr. Holley's on-scene admissions that he, in fact, possessed and threw that gun at issue, a fact that he later disputed at trial and himself testified that when he gave that statement, it was not truthful to the officers and, in fact, he had no knowledge of the firearm. It was also not plainly erroneous for the district court to admit the photograph of the vest as well as that recorded admission, and nor was it an abuse of discretion for Judge Larimer to limit the cross-examination of the firearms examiner on a single irrelevant and remote point, especially where his limited testimony, which was, as pointed out by Judge Sullivan, that the gun was, in fact, a gun and where, in fact, defense counsel repeatedly referred to it as a gun and a firearm to the jury in his closing, was not a disputed fact and, in any event, was harmless. I want to point out just a couple things. My friend said that there were no limiting instructions given and, respectfully, that's not correct. In the district court's opening instructions to the jury, that's at GA-128, Judge Larimer instructed the jury, Mr. Holley's not on trial here for anything other than possessing the firearm after he'd been convicted of a felony at some time prior to July 2, 2021. He referenced that when he admitted the photograph, Exhibit 29, of what the government's witness described as a white, powdery substance. That's at 258-59. Judge Larimer said, essentially, I think I told the jury in the opening instructions he's not on trial for anything else, but if you want me to give another instruction, let me know. I'm paraphrasing there a little bit. And then at the end, this is at GA-620. In the final instructions, Judge Larimer again repeated to the jury, keep in mind that Mr. Holley is on trial only for the one charge, that is, being a person who was a previously convicted felon. In terms of the other evidence, it was also relevant because Mr. Holley talked a lot about it. In fact, the person who described the evidence as drugs, as crack cocaine, was Mr. Holley. Mr. Holley testified that he had crack cocaine in that car. He testified that he was using it. He testified then that he wasn't using it. And this Bryant, his own witness, testified about Mr. Holley putting that jacket into the car, which turned out to be that bulletproof vest. So it was not a – could a different judge come to a different conclusion? Sure, it's conceivable. It's possible. But it was absolutely not an abuse of Judge Larimer's discretion to admit that, as well as for the reasons we've talked about, the fact that it's not 404B evidence, but also this Court has approved even in summary orders as a non-controversial matter that admitting firearms-adjacent items to prove knowledge or possession, such as a bulletproof vest in a 922G prosecution, is permitted. And that's Sproul, and that's a case that we've cited in our briefs. But, I mean, those are typically kind of tools of the trade cases, right? I mean, this is a little different. There's no suggestion that he's a drug dealer or that he's distributing. And so, I mean, is that a difference that matters? You're not really arguing these are tools of the trade. You're arguing that anybody who's got a bulletproof vest is more likely to have a gun, right? Judge, I think that we did not make that argument. No, I mean, that's the argument you're just making now, that they are adjacent to each other. Right. So in Sproul, the issue, as I recollect, was the officers did a search of the attic of a residence. And the defendant in that case had contested in the attic what was located, amongst other things, were a couple of firearms, some ammunition, a bulletproof vest, and I think some other items, clothing, if I recall correctly. And the issue was whose items were those, and were those in a 922G1 prosecution, a felon in possession case, were those items admissible so that the jury could determine who possessed those items in the attic. And there the district court admitted them, saying that these firearms adjacent items are relevant to showing knowledge and who possessed those items. I agree with you. That's not the argument we made in this case. I think this case is much simpler and much more straightforward. This is really about Mr. Hawley saying, even in the face of what Your Honor pointed out, that officers observed him throw the gun, that he was found feet from the gun after this high-speed chase, that Mr. Hawley took the stand and said, absolutely not. That is not my gun. He even argued to the jury, hey, look, the DNA expert said there's other DNA on here, and it could be female. And the gun has a pink handle intimating that Ms. Bryant, the passenger in the car who also testified, could have been her gun. So in light of those denials, Judge, where Mr. Hawley gives this videotaped statement saying, I had a lot of stuff in that car. I'll edit it down a bit, but I had a lot of stuff in that car. I threw the gun. I had some drugs. I had a vest. And sure enough, that's exactly correct, which is corroborated by what he finds is highly relevant evidence under Rule 401, because Mr. Hawley's testimony to the jury is, what I said there was totally false. That was all made up. So is your view the admissibility terms on whether or not he recanted? If he hadn't recanted, it would be a different calculus? No, Judge. I think under Rule 401, where it says that Rule 401 provides that information is admissible if it is relevant and helpful to determining a disputed fact. And so you're saying this is relevant to determine his possession? Correct, Judge. And so if he had also said that I have child pornography, that would come in too? I thought about that one as I was coming in here this morning. I think two points on that. Number one, there was no 403 balancing objection made. I think it would be unsuccessful anyways. I think child pornography could be a much harder one, and perhaps in that kind of a situation, maybe some type of sanitization would be warranted, that there were other materials in the car that Mr. Hawley admitted to, or hypothetical, depending on your question. But you could have done that with the drugs, which wasn't even demonstrated to be drugs. Respectfully, Judge, you're right that there's no testing on it, but Mr. Hawley explicitly testified that it was crack cocaine. No, I'm saying that there was nothing to indicate other than his own statement, right? He didn't bring in corroborating evidence. That's right, Judge. No, we introduced the photograph to show that when Mr. Hawley said, I threw the gun, the officers indeed recovered the gun. When Mr. Hawley said, I had a vest, in fact, he had a vest in the car. And when he also said, I had some drugs, that's also accurate. Because Mr. Hawley's testimony at trial was, that was all false, and I don't know anything about this gun. So those admissions and its corroboration is highly relevant to the jury in determining whether Mr. Hawley possessed that gun, and frankly, whether Mr. Hawley's admission that he possessed that gun is also accurate. So there's some tension then between what you're saying now and, I guess, an argument of harmless error. You're saying that you wanted the jury to consider those things. Harmless error would be that there's no likelihood that the jury did rely on these things to reach his verdict. No, Judge, I disagree. I think there's two different things there. The jury can rely on them in determining whether or not Mr. Hawley's statement on the scene that he possessed that gun is accurate. That's very different than saying a prejudice-type argument to say, go convict Mr. Hawley because, you know, he's a dirty drug dealer running around on the streets, which, of course, is not at all what this case was about, what nobody argued, what nobody suggested. That would be a far different case if the argument to the jury was, you should convict Mr. Hawley because he's a drug dealer. No, no, that wasn't the argument. I'm saying that that's the fear. That's the argument of Ms. Harrington, that that's why this shouldn't come in, because the jury is going to just say, well, government came up a little short on the gun, but, you know, we're confident on these other things, so we'll just go ahead. Sure. So I think the evidence of his possession is overwhelming for the reasons that Your Honor has already articulated, including the two officers who saw it, the proximity. But, yes, let's be clear. Mr. Hawley's on-the-scene admission is important evidence. I mean, nobody, I think, defense lawyer or prosecutor, would say — I thought you just conceded a minute ago that, you know, different judges might have come out in a different way. So they might have just said, yeah, you can bring in his statements. I possess the gun and some other stuff in the car. And if that had happened, then there would be no appeal on this issue. Sure. Well, I think that's the nature of discretion, right? And I think that's why this Court's review is so deferential to the trial judge, who gets to see that in real time and make those judgments on the ground. Do I think a different judge should have reached another determination? No. But I acknowledge, under discretion and how different judges apply the rules of evidence differently, is it possible? Sure. In this case, I think Judge Larimer's ruling is not only absolutely correct, but it's certainly not an abuse of discretion and, in any event, harmless. And very quickly, with respect to the ineffective assistance arguments, you're really saying we don't even – we could resolve this now on appeal. I'm sorry? You're not saying that we should send it back and let this be developed later with a 2255 that would allow defense counsel to submit an affidavit or something. You're saying we don't even need to do that, right? Judge, I'll say two things. I mean, the defense is – or the appellant is telling you that you can resolve it on these facts. We agree because there's no error. But, you know, this Court's oft-stated practice is to send it back. So we're not going to stand in the way of that, but I think you certainly could resolve it in the first instance because there was no error in the first place.  And what about if it was just harmless error? In terms of – are we talking about the expert or the evidence? No, I'm talking about the evidence at this point. Okay. So if we determine that it was harmless error just because there's overwhelming evidence of possession, then we could conclude from that that the second promise strickland has not been met? Correct. All right. Anything else you wanted to say with respect to the examiner? No, you've already made that point. Yeah, unless Your Honors have any other further questions. No. All right. Thank you very much. Appreciate it. Well, thank you both. We will reserve decision. You can go back out into the cold. No bills.